**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

VALENTINA DE LOS ANGELES
TIAPA MORENO,

      Petitioner,

v.

DORA CASTRO, Warden, Otero County Processing Center; MARY DE ANDA-YBARRA, Director of the El Paso Field Office, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and TODD BLANCHE, Acting U.S. Attorney General,

      Respondents.

Case No. 2:26-cv-00273-MIS-DLM

<u>**ORDER GRANTING MOTION FOR ATTORNEYS' FEES AND EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT**</u>

THIS MATTER is before the Court on Petitioner Valentina De Los Angeles Tiapa Moreno's Motion for Attorneys' Fees and Expenses Under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) ("Motion"), ECF No. 29, filed March 23, 2026.  The Federal Respondents filed a Response on March 25, 2026 ("Response"), ECF No. 30, to which Petitioner did not reply.  Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT** the Motion.

## I.    Background

Petitioner is citizen of Venezuela who came to the United States as a seventeen-year-old unaccompanied minor with her own infant child in March 2024.  Pet. ¶ 3, ECF No. 1.  After she

presented herself to an immigration official at the border, the government placed her in a government-run humanitarian shelter for children for about one month.  Id. ¶ 4.  It then released Petitioner to the care of her legal guardian in Minnesota after finding that she was neither dangerous nor a flight risk.  Id. ¶¶ 4, 54.  Thereafter, Petitioner lived peacefully in Minnesota, caring for her young child, and complying with all lawful orders regarding her immigration status.  Id. ¶ 4.

On January 14, 2026, Petitioner was at home with her child, her cousin Julio, Julio's wife Indriany, and Julio and Indriany's three-year-old child.  Id. ¶ 5.  Petitioner's partner, Alfredo, called Petitioner at home and reported that he was in his car being pursued by a car with a masked man who tried to ram his car.  Id.  Knowing he was being pursued by U.S. Immigration and Customs Enforcement ("ICE") agents—and knowing that ICE agents had killed a person less than a week earlier—Alfredo asked Petitioner to call the Minneapolis Police Department so he could surrender to them at his home.  Id. ¶ 6.  Alfredo nearly made it all the way home before he crashed into a snowbank.  Id.  He then ran towards the front door.  Id.  An ICE agent exited the chasing vehicle, tackled Alfredo, beat him, and began to choke him while he lay face down in the snow.  Id. ¶¶ 6, 8.

Seeing Alfredo in danger, Julio ran out to try to free his friend from the man attacking him.  Id. ¶ 7.  When Alfredo managed to free himself, Julio pulled him toward the front door where Petitioner (who was on the phone with 911) and Indriany were watching through a slightly ajar door.  Id. ¶¶ 7-8.  At no time did either Alfredo or Julio use or threaten to use a weapon to try to defend themselves, nor wield any object that could be deployed as a weapon against the ICE agent.  Id.

Regardless, as Julio and Alfredo entered the front door and tried to close it behind them, the ICE agent shot a bullet into the house through the front door—into the same room where Petitioner's young child was present—striking Julio in the leg.  Id. ¶ 9.  Alfredo, Julio, Petitioner, Indriany, and the two children then sought refuge in an upstairs bedroom, barring the door with a heavy dresser.  Id. ¶ 10.  Within minutes, numerous ICE agents arrived outside the house, fired tear gas and/or smoke bombs through the bedroom window, and broke into the house.  Id.

Fearing for the lives of their children, and hearing the ICE agents in their home, Petitioner and the others begged the agents not to kill them and said they would surrender.  Id. ¶ 11.  When the agents entered the room, they trained their guns on Petitioner, who was holding her child, and the others.  Id.

As it turns out, ICE had mistaken Alfredo for someone else.  Id. ¶ 12.  Nevertheless, ICE agents detained Petitioner, Indriany, Julio, Alfredo, and both children, even though they possessed no warrant of any kind.  Id.  A few days later, Respondents transferred Petitioner to a detention center in El Paso, Texas.  Id. ¶ 13.

It appears that in the days after January 14, 2026, the U.S. Department of Homeland Security ("DHS") put out a false version of these events.  See id. ¶ 14.

The Minnesota Bureau of Criminal Apprehension opened an investigation into the ICE agent who shot Julio for unreasonable use of force.  Id.  DHS has refused to cooperate in the investigation.[1]  Id.

---

[1]     On May 18, 2026, the ICE officer who shot Julio was charged in Minnesota state court with four counts of assault in the second degree and one count of falsely reporting a crime in connection with the shooting.  See Daniella Silva, ICE officer charged with four counts of assault in Minnesota shooting of Venezuelan immigrant, NBC News, May 18, 2026, available at https://perma.cc/Z5GR-S68S.

Petitioner would be a material witness to the Minnesota investigation and to the federal criminal charges brought against Alfredo and Julio. Id. ¶¶ 15-16. As such, on February 3, 2026, United States District Judge Paul A. Magnuson, who is presiding over Alfredo and Julio's case, enjoined the Government from removing any material witness—including Petitioner—from the United States. Id. ¶ 16 (citing United States v. Aljorna, No. 26-mj-23 (D. Minn. Feb. 3, 2026), ECF No. 43).

Curiously, on the very same day Judge Magnuson entered the injunction, Respondents transferred Petitioner from El Paso to the Otero County Processing Center, in Chaparral, New Mexico. Id. ¶ 17. What is more, on February 4, 2026, the Government moved Petitioner's next regularly-scheduled immigration court appearance from August 2026 to February 6, 2026. Id. ¶ 18. The Petition alleges that:

> Upon information and belief, Respondents are—in direct defiance of Judge Magnuson's order—[] seeking to effect Valentina's removal from the United States in contravention of her constitutional and statutory rights, and to thwart both a criminal investigation into an ICE officer and Alfredo and Julio's ability to mount a defense to the charges against them.

Id. Respondents have never disputed this allegation in these proceedings.

On February 4, 2026, Petitioner filed a Verified Emergency Petition for Writ of Habeas Corpus in this Court. ECF No. 1. The same day, the Court issued an Order directing Respondents to answer the Petition and show cause why it should not be granted. ECF No. 7.

On February 5, 2026, the Court issued a preliminary Order enjoining Respondents from transferring Petitioner outside the District of New Mexico during these habeas proceedings. ECF

4

No. 13.  The same day, the Court issued an interim Order granting Petitioner's immediate release from detention pending the resolution of the habeas petition.[2]  ECF No. 14 at 4.

On February 18, 2026, the Federal Respondents filed a Response to the Petition.[3]  ECF No. 20.  Therein, counsel for the federal Respondents acknowledges the facts of this case are "similar" to Duhan v. Noem, No. 2:26-CV-00019-MIS-JFR, 2026 WL 74195 (D.N.M. Jan. 9, 2026), and concede that "the Court's decision in Duhan v. Noem, would control the result here if the Court adheres to that decision, as the facts are not materially distinguishable . . . . " Id. at 2.  However, Respondents argued that Petitioner is an applicant for admission seeking admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  Id. at 1.

On February 23, 2026, the Court issued an Order granting the Petition, finding "that 8 U.S.C. § 1226(a) governs Petitioner's detention, her prior detention without a bond hearing violated her Fifth Amendment right to due process, and, as such, she is entitled to habeas relief with respect to the full and final resolution of her habeas petition." ECF No. 22 at 2.  The Court further found "that Respondents failed to articulate a legitimate interest in Petitioner's detention and therefore orders that she shall remain free from Respondents' custody . . . without restraints beyond those that existed before her unlawful detention." Id. at 2-3.  The Court further ordered "that Petitioner shall not be re-detained without a pre-deprivation bond hearing before a neutral Immigration Judge pursuant to 8 U.S.C. § 1226(a), at which the Government must prove by clear and convincing evidence that Petitioner is a danger or flight risk." Id. at 3.  Finally, the court

---

[2]    The day prior, Petitioner's child had been badly injured and required emergency surgery in Minnesota.  See ECF No. 14 at 1.

[3]    On February 5, 2026, the Warden of the Otero County Processing Center, Respondent Dora Castro, filed a Notice stating that "she takes no positions separate from the USA Respondents related to the Petition [Doc. 1], and that she hereby joins in the position(s) that the USA Respondents may take related to the Petition and/or other pleadings filed in this matter." ECF No. 16 at 1.

retained jurisdiction "to ensure compliance with its Order and to entertain any motions for attorneys' fees." Id.

Despite the Court's Order that Petitioner remain free from custody "without restraints beyond those that existed before her unlawful detention[,]" id., Respondents represented to Petitioner before releasing her from custody that she had "been arrested and placed in removal proceedings" and required Petitioner—without benefit of counsel—to sign an Order of Release on Recognizance that requires Petitioner to present to a "Duty Officer" in Minnesota on March 10, 2026. See ECF No. 24 at 2. Thereafter, Petitioner filed a Motion for Additional Relief asking this Court to nullify the Order of Release on Recognizance because it imposed conditions on Petitioner's release that did not exist before her unlawful arrest. Id. at 3. Respondents filed a Response "acknowledg[ing] that no conditions of release or reporting requirements existed at the time the Court granted the Petitioner's writ of habeas corpus and that the Order of Release on Recognizance should be rescinded." ECF No. 27 at 2. On March 2, 2026, the Court issued an Order granting the Motion for Additional Relief and nullifying the Order of Release on Recognizance. ECF No. 28.

On March 23, 2026, Petitioner filed the instant Motion for Attorneys' Fees and Expenses Under the EAJA, 28 U.S.C. § 2412(d). ECF No. 29. She seeks a total award of $39,611.24. Id. at 13. In support, she attached the Declaration of Kristie A. Lasalle, an attorney for the firm representing Petitioner in this matter, attesting to the amounts requested, ECF No. 29-1; Petitioner's attorneys' time records, ECF No. 29-2, 29-3; and a Declaration from Petitioner in support of a fee award, ECF Nos. 29-4, 29-5 ("Moreno Decl."). On March 25, 2026, Respondents filed a Response. ECF No. 30.

## II.    Legal Standard

Under the EAJA, a fee award is required if (1) petitioner is a "prevailing party," (2) the government's position was not "substantially justified," and (3) there are no special circumstances rendering an award of fees unjust. 28 U.S.C. § 2412(d)(1)(A); Hackett v. Barnhart, 475 F.3d 1166, 1172 (10th Cir. 2007).  The EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention."  Daley v. Ceja, 158 F.4th 1152, 1166 (10th Cir. 2025).

In a motion for EAJA fees and costs, the petitioner bears the burden of proving that they are the prevailing party and eligible to receive an award.  28 U.S.C. § 2412(d)(1)(B); Scarborough v. Principi, 541 U.S. 401, 414 (2004).  The burden then shifts to the government to demonstrate that its position was substantially justified or that special circumstances make an award unjust. See Hackett, 475 F.3d at 1170; Ericksson v. Comm'r of Soc. Sec., 557 F.3d 79, 81-82 (2d Cir. 2009); Love v. Reilly, 924 F.2d 1492, 1495 (9th Cir. 1991).

## III.    Discussion

Having been granted habeas relief, Petitioner now seeks an award of attorneys' fees and expenses under the EAJA.  ECF No. 29 at 13.  Respondents argue that the Motion should be denied because Respondents' position was substantially justified, ECF No. 30 at 2-4, and that special circumstances would render a fee award unjust, id. at 4.  However, they did not contest the amount of attorneys' fees requested.  See generally id. at 1-4.

Because Petitioner's motion meets the EAJA's requirements and the Government failed to carry its burden of showing (1) that its position was substantially justified and (2) special circumstances would render a fee award unjust, the Court will grant Petitioner's motion.

7

###### a.     Eligibility

First, to be eligible for an award of attorneys' fees under the EAJA, an individual cannot have a net worth in excess of $2,000,000 at the time the civil action was filed.  28 U.S.C. § 2412(d)(2)(B)(i).  Petitioner's Declaration states that she satisfies this requirement, Moreno Decl. ¶ 2, and Respondents do not dispute that assertion.  Accordingly, the Court finds that Petitioner is eligible for an award of attorneys' fees under the EAJA because she does not have a net worth above the statutory limit.

###### b.     Prevailing party

Next, Petitioner argues—and Respondents do not dispute—that she is the prevailing party in this action.  Mot. at 5.  The Court agrees: having granted the Petition, declared Petitioner's detention unlawful, and ordered her release, the Court's Order and resulting judgment led to a "material alteration of the legal relationship of the parties[.]"  Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res., 532 U.S. 598, 604 (2001); see also Al-Maleki v. Holder, 558 F.3d 1200, 1205-06 (10th Cir. 2009).  Accordingly, Petitioner is a prevailing party under the EAJA.  See Aguilar v. Blanche, Case No. 1:25-cv-00996-KWR-KK, 2026 WL 1078966, at *2 (D.N.M. Apr. 21, 2026).

###### c.     Substantial justification

Next, Petitioner argues that (1) Respondents' pre-litigation position was not substantially justified, Mot. at 5-6, and (2) Respondents' litigation position was not substantially justified, id. at 7-8.

Respondents argue that their litigation position—i.e., that Petitioner's detention was governed by 8 U.S.C. § 1225(b), and not § 1226(a)—was substantially justified.  Resp. at 2-4.

8

They do not address Petitioner's argument that their pre-litigation position was not substantially justified.  See generally Resp., ECF No. 30.

A position is substantially justified if it has a "reasonable basis both in law and fact[.]" Pierce v. Underwood, 487 U.S. 552, 565 (1988); see also id. at 566 n.2.  "[T]he government must establish three components to meet this test of reasonableness: a reasonable basis for the facts asserted; a reasonable basis in law for the legal theory proposed; and support for the legal theory by the facts alleged."  Harris v. R.R. Ret. Bd., 990 F.2d 519, 520-21 (10th Cir. 1993) (citing Gatson v. Bowen, 854 F.2d 379, 380 (10th Cir. 1988)).  The government's position includes both the underlying governmental action (or failure to act) and its litigation position.  Al-Maleki, 558 F.3d at 1207; see also 28 U.S.C. § 2412(d)(2)(D).

Here, Respondents wholly failed to argue that there was a reasonable basis for the facts asserted.  Nor could they.  The terrifying facts of this case are a scene from a dystopian novel.

Briefly, an agent of the United States government—wearing a mask—initiated an automobile pursuit of the wrong person (Alfredo), chased him to his home, wrestled him to the ground, beat him, and began to choke him while he lay face down in the snow—even though Alfredo was unarmed.  Pet. ¶¶ 5-8.  Then, when Alfredo freed himself of the masked man who was beating him and retreated to the relative safety of his home, the ICE agent shot a bullet through the front door—into a room where toddlers were present—striking a completely different man (Julio) in the leg.  Id. ¶¶ 8-9.  When the home's inhabitants sought refuge in an upstairs bedroom and barred the door with a dresser, ICE agents—who had no warrant—fired tear gas and/or smoke bombs through a window into the bedroom—where, again, two toddlers were present—and then broke into the house.  Id. ¶ 10.  ICE agents then detained all of the home's inhabitants, including the toddlers, even though they had no warrant to detain any of them, and even though none of them

9

had exhibited aggressive behavior toward ICE agents.  Id. ¶ 12.  Within a few days, Respondents had transferred Petitioner to a detention center in El Paso, Texas.  Id. ¶ 13.

This scenario made Petitioner a material witness to two investigations: the federal Government's criminal charges against Alfredo and Julio, and Minnesota's unreasonable use of force investigation into the ICE agent who shot Julio.  Id. ¶¶ 14-16.  Due to her status as a material witness to Alfredo and Julio's alleged crimes, on February 3, 2026, Judge Magnuson ordered that Petitioner not be removed from the United States.  Id. ¶ 16.  Suspiciously, the very same day that Judge Magnuson issued his Order, Respondents transferred Petitioner to the Otero County Processing Center in Chaparral, New Mexico.  Id. ¶ 17.  The next day—February 4, 2026—the Government expedited her immigration proceedings, moving her next regularly-scheduled appearance in Immigration Court up by six months from August 2026 to February 6, 2026.  Id. ¶ 18.  The reason is clear: the Government wants to remove Petitioner from the country before she can (1) assist the Minnesota authorities who are investigating the ICE agent for unreasonable use of force and (2) assist Julio and Alfredo in their defenses, Pet. ¶ 18—an allegation that Respondents have never disputed in these proceedings, see ECF No. 20.

As if all of this were not enough, after the Court granted Petitioner's Petition for Writ of Habeas Corpus finding that Petitioner had been unlawfully detained and ordering that Petitioner "shall remain free from Respondents' custody . . . without restraints beyond those that existed before her unlawful detention[,]" ECF No. 22 at 2-3, Respondents attempted to place conditions on Petitioner's release that did not exist before her unlawful detention.  Specifically, before releasing Petitioner from custody, Respondents represented to Petitioner—who was without the

10

benefit of counsel, even though at this point she had at least three attorneys[4]—that she had "been arrested and placed in removal proceedings" and required Petitioner to sign an Order of Release on Recognizance that requires Petitioner to present to a "Duty Officer" in Minnesota on March 10, 2026. See ECF No. 24 at 2.

If a reasonable basis for any of the actions described above exists—and the Court is doubtful—Respondents have failed to articulate it. For this reason alone, the Court finds that Respondents failed to carry their burden of establishing that their position was substantially justified. See Aguilar, 2026 WL 1078966, at *3 (finding that the Government's position was not substantially justified where it failed to argue that the underlying facts were substantially justified).

> **d.    Special circumstances that would render a fee award unjust**

Finally, Respondents argue that "[a] special circumstance that renders an EAJA fee award unjust in the present case is the unique predicament that such an award would place Respondents." Resp. at 4. Specifically, they argue that "Respondents actions at an agency level (i.e. the classification of Petitioner under 8 U.S.C. § 1225) are mandated by binding authority from the BIA[,]" i.e., the Board of Immigration Appeals' decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). Id. In Hurtado, the BIA held that all noncitizens residing in the United States are subject to the mandatory detention requirements of 8 U.S.C. § 1225(b), and therefore are not entitled to a bond hearing. 29 I. & N. Dec. at 218. Respondents argue that "[t]o acknowledge the practical reality that Respondents are legally bound to follow Hurtado, while simultaneously penalizing Respondents for doing so, would place Respondents in an impossible position." Resp. at 4.

---

[4]    See Clerk's Mins. of Status Conference, ECF No. 17.

11

The Court rejects Respondents' argument for two reasons. First, the argument wholly fails to acknowledge that nothing required them to arrest Petitioner in the first place. Prior to January 14, 2026, Petitioner was living peaceably with her family in Minnesota, raising her young child, and complying with all immigration orders. Pet. ¶ 4. She has no criminal record. Id. ¶ 55. Had Respondents not arrested Petitioner, they would not have placed themselves in the "unique predicament" of not being able to provide her a bond hearing under Hurtado. This "predicament" is of Respondents' own making.

Second, the Court agrees with United States District Judge Kea Riggs in Aguilar: Respondents—and in particular, Acting Attorney General Todd Lyons—have the authority to right the wrong of Hurtado. As Judge Riggs explained:

> The Court rejects the Government's attempt to cast the individual respondents as anything less than the leaders of their respective agencies, departments, and institutions. The Attorney General has broad authority to review de novo BIA decisions, including Hurtado. See 8 C.F.R. § 1003.1(g), (h). Through this process, the Attorney General could overturn this BIA precedent. Thus, the Attorney General is the final arbiter of the immigration agency's interpretation of a statute, including the statutes dealing with detention. Cf. Bamidele v. INS, 99 F.3d 557, 563–64 (3d Cir. 1996) (noting that attorney general overruled prior BIA interpretation of immigration statute and that attorney general's interpretation became one adopted by INS). Therefore, the Government is not powerless to consider and overturn Hurtado until the Tenth Circuit or the Supreme Court weighs in.

Aguilar, 2026 WL 1078966, at *4. In other words, Respondents are only "bound" by Hurtado because they want to be. That is not a "special circumstance" that would render a fee award unjust.

For these reasons, the Court finds that there are no special circumstances that would make an EAJA fee award unjust in this case. See id.; see also Garcia v. Wamsley, __ F. Supp. 3d __, 2026 WL 776151, at *7 (W.D. Wash. Mar. 19, 2026) (finding that there were no special circumstances that would make an EAJA fee award unjust in an immigration habeas case); Oscar

C.M. v. Knight, No. 1:25-cv-01915-TLN-SCR, 2026 WL 743350, at *2 (E.D. Cal. Mar. 17, 2026) (same).  To the contrary, denying an EAJA award would result in an injustice.

And because Respondents do not challenge the amount of fees requested by Petitioner, and because that amount is supported by record evidence, see ECF No. 29-1, 29-2, 29-3, the Court will award the full amount requested.  See Aguilar, 2026 WL 1078966, at *4.

**IV.    Conclusion**

Therefore, it is **HEREBY ORDERED** that:

1.    Petitioner Valentina De Los Angeles Tiapa Moreno's Motion for Attorneys' Fees and Expenses Under the EAJA, 28 U.S.C. § 2412(d), ECF No. 29, is **GRANTED**; and

2.    Petitioner shall have and receive from Respondents the amount of $39,611.24, for which sum let execution issue.[5]

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

---

[5]    The fees will be paid to Petitioner but delivered to Petitioner's attorneys.  See Astrue v. Ratliff, 560 U.S. 586, 595–98 (2010); Manning v. Astrue, 510 F.3d 1246, 1250–51 (10th Cir. 2007).